UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| COLD SPRING HARBOR LABORATORY, | ) ) ) |
| Plaintiff | ) ) |
| vs. | ) Case No. 4:12MC00684 AGF ) |
| ROPES & GRAY LLP, et al., | ) ) |
| Defendants, | ) ) ) |
| SIGMA-ALDRICH CORPORATION, | ) ) |
| Movant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion (Doc. No. 1) of Cold Spring Harbor Laboratory ("CSHL"), filed on December 6, 2012, to compel non-party Sigma Aldrich Corporation ("Sigma") to produce documents and a corporate representative pursuant to a subpoena issued in connection with an action captioned *Cold Spring Harbor Laboratory v. Ropes & Gray LLC, et al.*, No. 11-cv-10128-RGS, currently pending in the District of Massachusetts. Also before the court is Sigma's motion (Doc. No. 6) to quash the subpoena.

## BACKGROUND

The underlying Massachusetts case is a legal malpractice action in which CSHL alleges that the defendants, a law firm and a former partner at the firm, mishandled the prosecution of a series of patent applications in the area of biotechnology, on behalf of

CSHL, with the result that patents that allegedly should have issued in 2005 were delayed for seven years. An element of damages sought are the licensing revenues CSHL would have generated had the patents issued in a timely fashion. Fact discovery in the action is scheduled to close on December 21, 2012.

On October 25, 2012, CSHL served the subpoena at issue on Sigma, a supplier of biotechnology products, requesting the production of documents sufficient to show revenues generated from 2005 to the present from the sale by Sigma of numerous products, unit sales of the products, and the purchasers of the products on a transaction basis; all license agreements Sigma entered into in connection with the products; and catalogues and literature about the products. (Doc. No. 2-1.) The subpoena also requires the appearance of a Sigma representative to testify at a deposition about the above matters.

In its motion to compel, and in the context of Sigma's motion to quash, CSHL argues that the discovery it seeks is relevant on the issue of damages in the malpractice action, in particular, to support CSHL's damages expert's assessment of CSHL's lost licensing revenues. CSHL states that it "is willing to accept the majority of discovery in the form of summary data which may be aggregated and sorted by means of standard commercial accounting software." CSHL asserts that the subpoena "is substantially less burdensome on Sigma's customers who would otherwise have to be separately subpoenaed for this information."

Sigma argues that documents and testimony that CSHL requests encompasses highly confidential trade secret, customer, sales, research, development, and commercial

information. Sigma also asserts that part of the information sought is not available in electronic format and that the discovery will be very time consuming and expensive. Sigma argues that the relevance of the discovery is based on the speculative assumptions that CSHL will prevail not only in proving its malpractice allegations, but also that the patents would have covered products sold by Sigma, and that Sigma would have licensed the patents from CSHL. Sigma suggests that, at the least, the discovery at issue should be delayed until liability has been established in the malpractice action.

In support of its motion to quash the subpoena, Sigma has submitted the affidavit of its Director of Emerging Technologies, who attests that the products implicated in the subpoena total over 400,000; and that sales data, customer data, and licensing information requested contain highly confidential information, which if disclosed to Sigma's competitors or customers, or otherwise became publically available, would cause Sigma irreparable harm. The affiant also attests that it would take at least six individuals working full time for at least three weeks to collect the information requested. (Doc. No. 7.)

In reply, and at the Court's direction, CSHL has submitted a proposed protective order which would allow Sigma to designate as "Attorney's Eyes Only Confidential Information" any information it reasonably and in good faith believes to contain particularly sensitive scientific research, licensing, business, financial, market or other proprietary information, the disclosure of which is likely to cause Sigma harm.

By surreply, Sigma maintains that while CSHL's proposed protective order provides a level of protection, "the trade secret information is nevertheless disclosed to

third-parties (at least attorneys working in the technical field, expert witnesses in the field, court personnel, . . . copy services," and that the risk that the confidential information will be improperly disclosed or used is "incurable," as CSHL intends to use the information at trial.

## **DISCUSSION**

"[T]he factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *In re NCAA Student-Athlete Name & Likeness Licensing Lit.*, No. 4:12–mc–00508 JAR, 2012 WL 4856968, at *2 (E.D. Mo. Oct. 12, 2012). "Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Id*. at *3 (quoting *Misc. Docket Matter I v. Misc. Docket Matter 2*, 197 F.3d 922, 926-27 (8th Cir. 1999)).

While Sigma's suggestion to delay resolving the current dispute until liability is established in the Massachusetts case is attractive at first blush, there is no indication that the Massachusetts case was bifurcated as to liability and damages. Nevertheless, the Court is sensitive to Sigma's concerns about confidentiality, as well as to the burden on Sigma to comply with the documents production request. The Court also finds persuasive Sigma's arguments that the need for much of the discovery at issue, especially the customer lists and data, is tenuous. Upon review of the parties' arguments and evidence, the Court will order Sigma to produce immediately aggregate sales figures by product from 2005 to the present, subject to the protective order proposed by CSHL. In addition,

Sigma must produce a representative qualified to testify about these figures. The Court will deny CSHL's motion to compel, and grant Sigma's motion to quash in other regards.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Cold Spring Harbor Laboratory's motion to compel and Sigma-Aldrich Corporation's motion to quash are **GRANTED in part** and **DENIED in part** as set forth above. (Doc. No. 1 and Doc. No. 6.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 20th day of December, 2012.